STATE OF INDIANA ) IN THE HAMILTON SUPERIOR COURT
) SS:
COUNTY OF HAMILTON ) CAUSE NO. 29D03-

29D03 0705 PL490

BRANDON JOE HARRIS, HARRIS MOBILE APPEARANCE RECONDITIONING SERVICE, INC., TOM JONES, ROSS MESNICK, LAWRENCE WOODRING, SCOTT AMLING, TONY FACKLER, MIKE HUGHES, RICK ARRESE, LOU ZAPPA, SCOTT HARRIS, VALERIE HARRIS, GREG JONES, NATHAN CHISOLM, JONATHON, STOVER and TOM KRESGE,

Plaintiffs,

v.

MIRACLE APPEARANCE RECONDITIONING SPECIALISTS INTERNATIONAL, INC., INTERNATIONAL SERVICE GROUP, INC., INTERNATIONAL MANAGEMENT GROUP, INC., DAVID JONES, MEL LUIGS and DONOVAN HALL,

Defendants.

**JURY TRIAL DEMAND**

2007 MAY -1 PM 4:30

## COMPLAINT

Plaintiffs, Brandon Joe Harris ("Harris"), Harris Mobile Reconditioning Service, Inc., ("Harris Mobile"), Tom Jones ("Jones"), Ross Mesnick ("Mesnick"), Lawrence Woodring ("Woodring"), Scott Amling ("Amling"), Tony Fackler ("Fackler"), Mike Hughes ("Hughes"), Rick Arrese ("Arrese"), Lou Zappa ("Zappa"), Scott Harris ("Scott"), Valerie Harris ("Valerie"), Greg Jones ("Greg"), Nathan Chisolm ("Chisolm"), Jonathon Stover ("Stover") and Tom Kresge ("Kresge") (Harris, Harris Mobile, Jones, Mesnick, Woodring, Amling, Fackler, Hughes, Arrese, Zappa, Scott, Valerie, Greg, Chism, Stover and Kresge are hereinafter, collectively, referred to as the "Plaintiffs" or "Franchisees" or each as a "Plaintiff" or "Franchisee"), for their claims for relief against defendants, Miracle Appearance Reconditioning Specialists International, Inc.,

("MARS") International Service Group, Inc., ("International Service"), International Management Group, Inc., ("International Management") Men From Mars, Inc., ("Men from Mars") Donovan Hall ("Hall"), Mel Luigs ("Luigs") and David Jones ("D. Jones") (MARS, International Service, International Management, and Men from Mars are hereinafter, collectively, referred to as the "Related Entities") (D. Jones, Luigs and Hall are hereinafter, collectively, referred to as "Management") (the Related Entities and Management are hereinafter, collectively, referred to as the "Co-Conspirators" and each as a "Co-Conspirator") (MARS, the Related Entities and Management are hereinafter, collectively, referred to as "Defendants" and each as a "Defendant") (Mars and one or more of the Co-Conspirators, including their agents and representatives as applicable, are hereinafter, collectively, referred to as the "Conspirators" and each as a "Conspirator", state as follows:

**JURISDICTION AND VENUE**

1. Harris and Jones are individuals residing in the State of Indiana.

2. Harris Mobile is an Indiana corporation with its principal place of business located in Hamilton County which is the entity owned solely by Harris to operate a MARS franchise (Harris, Jones and Harris Mobile are hereinafter, collectively, referred to as the "Indiana Plaintiffs")..

3. Mesnick and Woodring are individuals residing in the State of Ohio (collectively, the "Ohio Plaintiffs").

4. Amling and Fackler are individuals residing in the State of Iowa (collectively, the "Iowa Plaintiffs").

5. Hughes and Arrese are individuals residing in the State of Georgia (collectively, the "Georgia Plaintiffs").

6. Zappa is an individual residing in the State of Florida (the "Florida Plaintiff").

7. Scott, Valerie and Greg are individuals residing in the State of Mississippi (the "Mississippi Plaintiffs").

8. Stover is an individual residing in the State of New York (the "New York Plaintiff").

9. Kresge is an individual residing in the State of Hawaii (the "Hawaii Plaintiff").

10. MARS is a corporation duly incorporated and existing under the laws of the State of Texas with their principal place of business located at 2001 East Division, Suite 101, Arlington, Texas 76011.

11. The Related Entities are corporations duly incorporated and existing under the laws of the State of Texas with their principal place of business located at 2001 East Division, Suite 101, Arlington, Texas 76011.

12. Management is comprised of individuals residing within the State of Texas.

13. On information and belief, two or more individuals comprising Management are employed as top level management in and as directors of both MARS and each of the Related Entities.

14. On information and belief, two or more individuals comprising Management are substantial and/or controlling shareholders of both MARS and each of the Related Entities.

15. The United States District Court for the Southern District of Indiana has subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1332; diversity of citizenship. The matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and Plaintiffs reside in states other than that of the Defendants.

16. The United States District Court for the Southern District of Indiana has subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1331; federal question. This action is brought under the provisions of the Racketeer Influenced and Corrupt Organizations Act, 18. U.S.C. § 1962 *et. seq.*, the Clayton Act (15 U.S.C. § 15) to recover treble the amount of damages to their businesses and property sustained by Plaintiffs as a result of the acts of Defendants in violation of the antitrust laws, as hereinafter more fully appears, and under the provisions of the Sherman Act (15 U.S.SC. § 4) and the Clayton Act (15 U.S.C. §§ 15, 25, and 26) to prevent and restrain violations of the antitrust laws, as hereinafter more fully appears. Jurisdiction is, therefore, also conferred upon the United States District Court for the Southern District of Indiana pursuant to 18 U.S.C. § 1337 and 18 U.S.C. §1965.

17. At the time the above-referenced action was brought, MARS, the Related Entities, and Management were and currently remain subject to both specific and general personal jurisdiction within the State of Indiana. Venue is therefore proper in this Court.

**COMMON ALLEGATIONS**

18. The nature of the claims alleged herein, and of the commerce involved, present substantial questions of law and fact comment to the Plaintiffs Federal and State claims against Defendants.

19. Indeed, the Plaintiffs are similarly situated in that each has entered into similar franchise agreements with MARS and each of them are subject to the same or similar acts and business practices by the Defendants, and each of them has sustained damages of like kind although varying in amount.

20. MARS is the owner and franchisor of the registered trademark and trade name M.A.R.S. and of other related marks. Using such name and merchandising concept integrated

therein, MARS licenses various persons throughout the United States, including the Plaintiffs, to make use of such trade name, trade marks, and merchandising concepts in the operation of places of business specializing in providing multiple "mobile" automobile cosmetic appearance reconditioning services primarily to automobile dealers, rental car companies, insurance companies, restaurants, automotive services retailers and consumers.

21. Pursuant to the terms of the franchise agreements, each Franchisee is subject to covenant not to compete for a duration of two (2) years within the "Designated Market Area" and within ten (10) miles from any other franchisee or other authorized MARS location (the "Non-Compete Provision(s)").

22. Pursuant to the terms of the franchise agreements, Franchisees may terminate their agreements with MARS in the event that Franchisor commits a material breach and fails to cure the same within thirty (30) days of written notice.

23. The various actions and inactions complained of herein have at various times been called to the attention of MARS and Management by various franchisees, including one or more of the Plaintiffs, and demands have been made on MARS for remedial action, however, MARS has refused and/or failed to act.

24. Each franchisee, including each Plaintiff, has an exclusive right to service "Established Accounts" and "Protected Accounts" pursuant to the terms of their individual franchise agreements (collectively, the "Exclusive Accounts").

25. Pursuant to the terms of the franchise agreements and arising out of the fiduciary relationship between MARS and each Plaintiff, MARS is obligated to protect the Exclusive Accounts.

26. Pursuant to the terms of the franchise agreements, each franchisee must pay a minimum of 2% of gross revenue into the "National Co-Op Fund", which MARS is to use for advertising purposes only (the "Marketing Fees").

27. Pursuant to the terms of the franchise agreements, each franchisee, including each Plaintiff, must pay a minimum of 5% of gross sales for supplies offered by MARS (the "Supply Fee").

28. On information and belief, a significant portion of the Marketing Fees and the Supply Fees have been misappropriated to and for the benefit of the Conspirators rather than utilized for marketing and supplies.

29. MARS has represented that there are no price increases relating to the sale of supplies from MARS to franchisees other than an increase due to the overhead expense relating directly to the distribution of supplies to Franchisees.

30. Despite MARS representations otherwise, supplies have been fraudulently sold to MARS franchisees at significant increases in cost at the expense of and to the detriment of MARS franchisees, including Plaintiffs.

31. The Supply Fee is non-refundable.

32. "Royalty Fees" are composed of the following: five percent (5%) is attributed franchisee fees (the "Franchise Fees"), two (2%) is attribute to the Marketing Fees and the remaining five percent (5%) is attributable to Supply Fees.

33. Plaintiffs must rely on MARS to provide accurate and good faith accounting in order to pay the Royalty Fees.

34. Frequently, the accounting presented by MARS to its franchisees, including Plaintiffs, is fraudulently, maliciously, intentionally, recklessly and/or negligently inaccurate,

sloppy, indeterminable, and grossly overstated, thus resulting in a significant and improper increase in the Royal Fee obligations of the franchisees, including the Plaintiffs.

35. Despite requests to MARS for resolution, clarification, and reconciliation of accounting matters in order to stop the bleeding of overpaid Royalty Fees, MARS has repeatedly and intentionally failed to act, thus, effectively leaving Plaintiffs with no method by which to verify the amount stated by MARS as Royalty Fees.

36. All franchisees of MARS are required and/or coerced into having any and all employees of said franchisee become sponsored franchisees as per the franchise agreements and operations manuals ("Franchise Employees").

37. Franchise Employees are subject to a similar Non-Compete Provision.

38. At all times, MARS had knowledge concerning the matters alleged herein far superior to that possessed by Plaintiffs and acted from a position of greater economic and bargaining power. For this reason, Defendant acted or should be held to have acted, in the capacity of a fiduciary, and, as such, was under a duty to make full disclosure of all facts concerning the transactions mentioned herein that were necessary to permit Plaintiffs to make intelligent decisions regarding the purchase of their respective franchise, to make full disclosure to Plaintiffs of all the terms of the franchise agreements, the reason therefore, and the probable effect thereof, to permit Plaintiffs to negotiate respecting any of the terms of said agreements, and otherwise to exercise the utmost good faith and fairness toward Plaintiffs in the negotiations leading to the execution of the franchise agreements, and in the performance thereof. This fiduciary duty applies particularly with respect to royalty fees, advertising charges, and payments for supplies and services, which sums were paid and/or are continually being paid by each Plaintiff to MARS in its capacity as fiduciary and were received by MARS in that capacity.

39. Despite MARS' and Management's fiduciary, contractual, statutory and moral obligations to Plaintiffs, the Conspirators have conspired and continue to conspire for the purpose of perpetuating a fraudulent scheme (the "Fraudulent Scheme") against franchisees, including the Plaintiffs, fueled by Defendants' singular goal of generating as much revenue as possible through a pattern of fraudulent misrepresentations and deceptive practices in order to line Management's pockets with little regard, if any at all, to the harm being done to the MARS name, the MARS franchise system, and MARS franchisees, including the Plaintiffs.

40. The Conspirators have generated funding to perpetuate the Fraudulent Scheme against the Plaintiffs through the rapid, negligent and unrestricted sale of MARS franchises and via actual and/or planned direct and improper competition with franchisees.

41. On information and belief, the rapid and unrestricted sale of the MARS franchises has been facilitated through a pattern of fraudulent misrepresentations, as specifically set forth throughout this Complaint, by the Conspirators aimed at inducing prospective purchases to invest large sums of capital into a business opportunity with grossly overstated income potential to the detriment not only of said purchasers, but to all franchisees, including the Plaintiffs due to resulting dilution of talent and ability amongst the MARS franchisees and the diminishment of the MARS name as a whole.

42. On information and belief, as part of the Fraudulent Scheme, the Conspirators have devised a plan whereby the Conspirators would begin employing teams owned and operated by the Conspirators ("MARS Employee Teams") to directly invade and compete within the same geographic regions as franchisees, including the Plaintiffs, and for the Exclusive Accounts.

43. MARS Employee Teams have already begun their invasion of many regions and accounts that are purportedly under the protection of MARS for the benefit of MARS franchisees, including the Plaintiffs.

44. On information and belief, a portion of the Supply Fees and the Marketing Fees are being misappropriated by the Conspirators, siphoned away, and utilized for the improper purpose of recruiting MARS Employee Teams and to fund the Conspirators planned and coordinated takeover effort.

COUNT I

(Fraud and Deception)

45. The Plaintiffs incorporate herein by reference all preceding and subsequent allegations contained throughout this Complaint.

46. MARS' offer to sell its franchises contemplated a continuing, close relationship between MARS and Plaintiffs during which MARS would make full disclosure to each Plaintiff of all material facts respecting their relationship an franchise operations, and Plaintiffs could place trust and confidence in MARS to deal fairly with and protect the interests of its franchisees, including Plaintiffs.

47. In addition to other fraudulent and deceptive representations and acts contained throughout this Complaint, which are hereby incorporated herein by reference, the Conspirators have engaged in numerous other fraudulent and deceptive practices.

48. The Conspirators represented that it would provide each Plaintiff with adequate orientation and training.

49. The Conspirators represented that Marketing Fees and Supply Fees were to be expended exclusively for advertising and supplies for the benefit of franchisees, including, but not limited to, the Plaintiffs.

50. The Conspirators represented that they would perform period inspections of each Plaintiff's business operations and facilities to determine, insure, an offer advice concerning quality control, the adherence to MARS' standardized formulas and operational methods, and to suggest methods to improve and increase profitability of each Plaintiff. These representations were made by MARS with full knowledge that Plaintiffs were without special knowledge, training, or experience in the operation of a MARS franchise.

51. The Conspirators represented that the MARS franchise program and merchandizing concept relating to it was an integral part of the business philosophy and Plaintiffs would gain the benefit of the stature, experience, financial support and knowledge of MARS.

52. The Conspirators represented that MARS would provide all of the services represented by MARS as incumbent upon a franchisor as represented to Plaintiffs.

53. The Conspirators represented that MARS franchises were profitable and, in reliance thereon, Plaintiffs could anticipate a high net income and a profitable and successful business career as a MARS franchisee.

54. The Conspirators represented that each geographic area from which each Plaintiff conducts its business out of could support a MARS franchisee outlet.

55. The Conspirators represented that MARS would provide Plaintiffs and Franchise Employees with exceptional training, management advice, and assistance in order to ensure their

ability to manage and operate profitable MARS franchises even without having had previous business experience.

56. The Conspirators represented that that the prices paid by MARS for supplies would benefit Plaintiffs as such reflects the benefit of mass purchasing power.

57. In reliance upon the representations made by the Conspirators acting through their agents and representatives, each Plaintiff made full and complete disclosure to MARS concerning each Plaintiff's personal affairs, credit rating, and financial condition, and other matters requested by MARS, reposing in MARS the trust and confidence born of the fiduciary relationship of MARS to each Plaintiff.

58. MARS was aware that Plaintiffs had no prior experience in the operation of a MARS franchise or similar business.

59. MARS was also aware that Plaintiffs had no resources other than those declared to MARS, that if a Plaintiffs purchase a MARS franchise that substantially all of said Plaintiff's assets would be invested therein, and that said Plaintiff could not withstand an unprofitable siege of business and would therefore have to rely on MARS' financial and management assistance to insure the profitability of said MARS franchise.

60. Indeed, the Conspirators, in their never-ending effort to sell as many franchises as possible without regard to quality or service, established a relationship with Sallie Mae Funding to ensure that potential franchisees, who would otherwise be unable to obtain financing or who were otherwise unqualified, would be able to fork over a franchise fee.

61. MARS was aware that each Plaintiff was relying on the representations of MARS and was placing themselves and their funds completely in the hands and control of MARS.

62. Each Plaintiff, placing reasonable reliance upon representations of MARS, executed a franchise agreement, purchased a franchise, purchased equipment, and promised future payments as royalty fees.

63. The representations of the Conspirators, acting through their respective agents and representatives, contained throughout this complaint were false, in bad faith, fraudulent, deceptive and misleading.

64. The false, fraudulent, and misleading statements were made by the Conspirators with knowledge that they were false, fraudulent, and misleading, or with reckless disregard for their truth or falsity.

65. The False, fraudulent, and misleading statements made by the Conspirators were intended by the Conspirators to be believed and relied on by Plaintiffs and to induce their purchase of MARS franchises.

66. In making the false, fraudulent, and misleading statements alleged herein, The Conspirators acted willfully and with malice, or with reckless disregard for the rights of Plaintiffs.

67. It was not until subsequent to purchasing a MARS franchise, the making of substantial investments, and the payment of substantial Royalty Fees that Plaintiffs learned of the Fraudulent Scheme and deceptive practices that had been and continue to be practiced on them, since it required a long period of time operating under the MARS franchise system for such fraud and deception to become apparent.

WHEREFORE, Plaintiffs, by counsel, hereby request the Court to find that:

A. The Conspirators are liable on the claims as alleged herein;

B. Plaintiffs are entitled damages injunctive relief preliminarily and permanently enjoining the activities of the Conspirators as described herein;

C. Plaintiffs are entitled to damages in an amount to be determined, including, but not limited to restitution of any and all franchise and other related fees paid to the Conspirators, attorney fees and costs;

D. Plaintiffs are entitled to rescission of their respective franchise agreements, including, but not limited to, any and all provisions or collateral agreements restraining Plaintiffs' ability to continue operating their businesses in any manner whatsoever or restraining Franchisee Employees in any manner whatsoever;

E. Alternatively, Plaintiffs are entitled to reformation of the Franchise agreement to comply with applicable State and Federal laws; and,

E. Plaintiffs are entitled to any and all other available legal or equitable remedies, damages and other available remedies pursuant to any and all applicable Federal and State statutes and common law; and,

F. Plaintiffs are entitled to all other just and proper relief, including the relief as identified herein.

COUNT II

(Violation of Federal and State RICO Acts)

68. The Plaintiffs incorporate herein by reference all preceding and subsequent allegations contained in this Complaint.

69. The actions of the Conspirators crossed state lines and affect interstate commerce.

70. Two or more individuals comprising Management are in control of and associated with MARS and the Related Entities.

71. On information and belief, Management routinely participates as top level management in the affairs of the MARS and the Related Entities.

72. On information and belief, Managements' participation in MARS, the Related Entities, and the fraudulent actions and inactions set forth throughout this Complaint at all times relevant was through a pattern of racketeering activity, including mail fraud pursuant to 18 U.S.C. § 1341 and wire fraud pursuant to 18 U.S.C. § 1343.

73. On information and belief, Managements' participation in MARS, the Related Entities, and the fraudulent actions and inactions set forth throughout this Complaint at all times relevant was through a pattern of racketeering activity, including, but not limited to, criminal state claims of conversion, deception, theft, conspiracy, false advertising, and other state-specific crimes.

74. On information and belief, the Conspirators conspired to and did utilize the mail and telephone lines in an effort to perpetrate the Fraudulent Scheme against the Plaintiffs.

75. The acts contained herein and throughout this Complaint alleging deceptive practices, fraud, bad faith, misappropriation of funds, conversion, false pretenses, criminal conspiracy and violations of antifraud and antitrust laws, constitute a pattern of activity directed at perpetrating a scheme to defraud the Plaintiffs.

76. The fraudulent solicitation of the franchisees as well as the fraudulent activities herein described was advanced utilizing both the mail service and telephone services.

77. The Plaintiffs have been injured by reason of such fraudulent conduct.

78. Unless the aforementioned activities of the Conspirators are abated, such activities will continually pose a threat to the public.

79. The Conspirators, using the United States Postal Service to aid in the perpetuation of the Fraudulent Scheme against Plaintiffs, committed mail fraud as defined by 18 USC §1341.

80. The Conspirators, through interstate phone and e-mail communications with franchisees, including the Plaintiffs, to aid in the perpetuation of the Fraudulent Scheme against Plaintiffs, committed wire fraud as defined by 18 USC §1343.

81. The Conspirators, through their fraudulent representations, deceptive practices, and Fraudulent Scheme, utilizing Sallie Mae as a funding source, committed bank fraud as defined by 18 USC §1344.

82. On information and belief, the Conspirators have knowingly and intentionally received proceeds directly or indirectly derived from a pattern of racketeering activity aimed at advancing the Fraudulent Scheme, and have used or invested those proceeds or the proceeds derived there from to acquire an interest in property or to establish or to operate the enterprises, including, but not limited to, the Related Entities.

83. The Conspirators have, through a pattern of racketeering activity, knowingly or intentionally acquired and maintained, either directly or indirectly, an interest in or control of property and enterprises, including, but not limited, to those contained herein.

84. The Conspirators have knowingly or intentionally conducted the activities of these enterprises and control said property through a pattern of racketeering activity.

85. The Conspirators have engaged in prohibited activities as defined by 18 USC §1961, Racketeering Influenced Corrupt Organization Act and related provisions pursuant to I.C. § 35-45-6, *et. seq.* (Indiana RICO), New York Penal Law Article 460, *et. seq.* (New York RICO), O.C.G.A. § 16-14-4, *et. seq.* (Georgia RICO), Miss. Code An. § 92-43-5, *et. seq.* (Mississippi RICO), R.C. 2923.32 *et. seq.* (Ohio RICO), HRS § 842-2 *et. seq.* (Hawaii RICO),

Florida Statutes, Chapter 895 *et. seq.* (Florida RICO), Iowa Code 706(A) *et. seq.* (Iowa RICO) (collectively, "State RICO Statutes").

86. The Conspirators are entitled to treble damages, attorneys fees, and other costs pursuant to 18 USC §1964 and to all remedies and relief as provided pursuant to State RICO Statutes and caselaw.

87. The Plaintiffs have suffered damage proximately caused by the Conspirators in violation of Federal and State RICO laws in an amount to be determined, including actual damages, treble damages, attorney fees, punitive damages, statutory damages, and costs.

88. Plaintiff's blatant and consistent fraudulent, deceptive and unfair activities perpetrated against the Plaintiffs with leave little if no value whatsoever to the franchise relationship and has resulted in irreparable harm to the franchise relationship.

WHEREFORE, Plaintiffs, by counsel, hereby request the Court to find that:

A. The Conspirators are liable on the claims as alleged herein;

B. Plaintiffs are entitled damages injunctive relief preliminarily and permanently enjoining the activities of the Conspirators as described herein;

C. Plaintiffs are entitled to damages in an amount to be determined, including, but not limited to restitution of any and all franchise and other related fees paid to the Conspirators, attorney fees and costs;

D. Plaintiffs are entitled to rescission of their respective franchise agreements, including, but not limited to, any and all provisions or collateral agreements restraining Plaintiffs' ability to continue operating their businesses in any manner whatsoever or restraining Franchisee Employees in any manner whatsoever;

E. Alternatively, Plaintiffs are entitled to reformation of the Franchise agreement to comply with applicable State and Federal laws; and,

E. Plaintiffs are entitled to any and all other available legal or equitable remedies, damages and other available remedies pursuant to any and all applicable Federal and State statutes and common law; and,

F. Plaintiffs are entitled to all other just and proper relief, including the relief as identified herein.

COUNT III

(Violations and Conspiracy to Violate Antitrust Laws)

89. The Plaintiffs incorporate herein by reference all preceding allegations.

90. Beginning at a point unknown and continuing uninterruptedly through the date of filing of this Complaint, Defendants have combined, contracted, and conspired, and continue to combine, contract, and conspire, to unreasonably restrain trade and commerce in markets throughout the United States.

91. In furtherance of the violations and conspiracy to violate antitrust laws, MARS has required each of its franchisees, including Plaintiffs, to enter into its standard form of franchise agreements, has conditioned the use of its unique and distinctive trade name, and of its unique and distinct trademarks on each Plaintiff's acceptance of and adherence all the requirements , obligations and conditions contained in said Plaintiff's respective franchise agreement, and has enforced the requirements, obligations, and conditions contained therein by persuasion and coercion through its superior economic and market power its hold over Plaintiffs by virtue of its trade name, trademarks, and franchise agreements.

92. The franchise agreements and related documents, as may have been amended from time to time, and the acts of Defendants, are violative of antitrust laws in that franchisees, including Plaintiffs, have been forced, de facto, to purchase supplies need for their businesses exclusively from Defendants at prices determined by Defendants, which prices are greater than Plaintiffs could obtain if they were "financially" able to purchase from competitive sources in the open market.

93. The franchise agreements and related documents, as may have been amended from time to time, and the acts of Defendants, are violative of antitrust laws in that franchisees, including Plaintiffs, have been forced, de facto, to provide any and all third-party reconditioning or related services needed for their businesses exclusively from Defendants or "approved" third party vendors at prices determined by Defendants, which prices are greater than Plaintiffs could obtain if they were "financially" able to subcontract out third-party services to competitive service providers in the open market.

94. MARS has combined, conspired, and participated with one or more of the Co-Conspirators in the offenses charged herein, and have performed acts in furtherance thereof.

95. Indeed, MARS and one or more of the Co-Conspirators, during all times pertinent, knew, or in the exercise of reasonable care should have known, of the various illegal practices by MARS and other CO-Conspirators.

96. MARS and one or more of its Co-Conspirators have enjoyed the profits of such illegal practices, and have taken advantage of them be having been forced upon Plaintiffs to the advantage of MARS and one or more of its Co-Conspirators and with their knowledge as sources of supply for the various supplies and services as identified herein.

97. MARS and one or more of its Co-Conspirators have conspired to fix and control the prices and availability of products and services as alleged above, and have at all time pursued ad course of conduct intended and designed to maintain such controls in and effort to restrain competition in markets for the described products and services.

98. Plaintiffs have suffered damages in an amount to be determined as a result of the activities of the Conspirators as referenced herein and throughout this Complaint.

99. Plaintiff's blatant and consistent fraudulent, deceptive and unfair activities perpetrated against the Plaintiffs with leave little if no value whatsoever to the franchise relationship and has resulted in irreparable harm to the franchise relationship.

WHEREFORE, Plaintiffs, by counsel, hereby request the Court to find that:

A. The Conspirators are liable on the claims as alleged herein;

B. Plaintiffs are entitled damages injunctive relief preliminarily and permanently enjoining the activities of the Conspirators as described herein;

C. Plaintiffs are entitled to damages in an amount to be determined, including, but not limited to restitution of any and all franchise and other related fees paid to the Conspirators, attorney fees and costs;

D. Plaintiffs are entitled to rescission of their respective franchise agreements, including, but not limited to, any and all provisions or collateral agreements restraining Plaintiffs' ability to continue operating their businesses in any manner whatsoever or restraining Franchisee Employees in any manner whatsoever;

E. Alternatively, Plaintiffs are entitled to reformation of the Franchise agreement to comply with applicable State and Federal laws; and,

E. Plaintiffs are entitled to any and all other available legal or equitable remedies, damages and other available remedies pursuant to any and all applicable Federal and State statutes and common law; and,

F. Plaintiffs are entitled to all other just and proper relief, including the relief as identified herein.

COUNT IV

(Breach of Fiduciary Duties)

100. The Plaintiffs incorporate herein by reference all preceding allegations.

101. MARS at all times had knowledge concerning the matters alleged herein far superior to that possessed by Plaintiffs and acted from a position of greater economic and bargaining power. For this reason, Defendant acted or should be held to have acted, in the capacity of a fiduciary, and, as such, was under a duty to make full disclosure of all facts concerning the transactions mentioned herein that were necessary to permit Plaintiffs to make intelligent decisions regarding the purchase of their respective franchise, to make full disclosure to Plaintiffs of all the term so the franchise agreements, the reason therefore, and the probable effect thereof, to permit Plaintiffs to negotiate respecting any of the terms of said agreements, and otherwise to exercise the utmost good faith and fairness toward Plaintiffs in the negotiations leading to the execution of the franchise agreements, and in the performance thereof. This fiduciary duty applies particularly with respect to royalty fees, advertising charges, and payments for supplies and services, which sums were paid and/or are continually being paid by each Plaintiff to MARS in its capacity as fiduciary and were received by MARS in that capacity.

102. The Conspirators have breach their fiduciary duties to Plaintiffs by virtue of their fraudulent and deceptive activities perpetrated against Plaintiffs.

103. Plaintiff's blatant and consistent fraudulent, deceptive and unfair activities perpetrated against the Plaintiffs with leave little if no value whatsoever to the franchise relationship and has resulted in irreparable harm to the franchise relationship.

WHEREFORE, Plaintiffs, by counsel, hereby request the Court to find that:

A. The Conspirators are liable on the claims as alleged herein;

B. Plaintiffs are entitled damages injunctive relief preliminarily and permanently enjoining the activities of the Conspirators as described herein;

C. Plaintiffs are entitled to damages in an amount to be determined, including, but not limited to restitution of any and all franchise and other related fees paid to the Conspirators, attorney fees and costs;

D. Plaintiffs are entitled to rescission of their respective franchise agreements, including, but not limited to, any and all provisions or collateral agreements restraining Plaintiffs' ability to continue operating their businesses in any manner whatsoever or restraining Franchisee Employees in any manner whatsoever;

E. Alternatively, Plaintiffs are entitled to reformation of the Franchise agreement to comply with applicable State and Federal laws; and,

E. Plaintiffs are entitled to any and all other available legal or equitable remedies, damages and other available remedies pursuant to any and all applicable Federal and State statutes and common law; and,

F. Plaintiffs are entitled to all other just and proper relief, including the relief as identified herein.

COUNT V

(Request for Preliminary and Permanent Injunctive Relief)

104. The Plaintiffs incorporate herein by reference all preceding allegations.

105. The fraudulent and deceptive activities as set forth throughout this Complaint represents the Conspirators attempt to perpetrate the Fraudulent Scheme against all MARS franchisees, including the Plaintiffs.

106. The Fraudulent Scheme and deceptive practices are detrimental to the Plaintiffs, and, unless preliminarily and permanently enjoined, will result in immediate and irreparable harm resulting in the inability of Plaintiffs to properly protect their businesses, their investments, and the MARS name.

107. The public will not be disserved in the event the Court grants the relief requested herein.

108. The Plaintiffs are likely to succeed on the merits of this case.

109. An emergency exists in this matter because the continued payment by Plaintiffs to MARS of Royalty Fees will only serve to provide funding and strength for the very Fraudulent Scheme and deceptive practices attempting to be enjoined herein.

110. Furthermore, an emergency exists in this matter because current spread of MARS Employee Teams are now or soon will be unfairly competing directly against MARS franchisees, including the Plaintiffs.

111. As a result of the Conspirator's fraudulent actions, the Plaintiffs are without an adequate remedy at law.

WHEREFORE, Plaintiffs, by counsel, respectfully pray for the following relief:

A. That the Court preliminarily enjoin and permanently enjoin that payment of Plaintiffs of Franchise Fees;

B. That the Court preliminarily enjoin and permanently enjoin any and all MARS Employee Teams from competing in markets wherein Plaintiffs businesses are located or relating the Exclusive Accounts;

C. That the Court preliminarily enjoin and permanently enjoin any and all attempts by the Conspirators to improperly retaliate against any Plaintiff for the filing of the above-reference action.

D. That the Court set this matter for a prompt hearing;

E. That the Plaintiffs be awarded damages, attorney fees, and costs in an amount to be determined; and,

F. Such other relief that is just and proper in the premises.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury on all issues triable by jury in this action.

Date: April 27, 2007

Respectfully Submitted,

**DAVIS & SARBINOFF, LLP**, an Indiana limited liability partnership,

By: ______________________

P. Adam Davis, Esquire
DAVIS & SARBINOFF, LLP
9000 Keystone Crossing, Suite 660
Indianapolis, Indiana 46240
Telephone: (317) 569-1296
Facsimile: (317) 569-1293
E-mail: adavis@d-slaw.com